# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| LINDA F. ELLISON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:17-cv-00729** |
| v. | ) | **Judge Trauger** |
| | ) | **Magistrate Judge Brown** |
| | ) | |
| CLARKSVILLE MONTGOMERY | ) | |
| COUNTY SCHOOL, | ) | |
| | ) | |
| **Defendant.** | ) | |

To: The Honorable Aleta A. Trauger, United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's motion for summary judgment (Docket Entry No. 53) and Plaintiff's motion for judgment on the pleadings (Docket Entry No. 60). For the reasons stated below, the Magistrate Judge **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED,** that Plaintiff's motion for judgment on the pleadings be **DENIED,** and that this action be **DISMISSED WITH PREJUDICE.**

## I. INTRODUCTION

Plaintiff, Linda F. Ellison, filed this *pro se* action against Defendant, Clarksville Montgomery County School, asserting claims for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA") for "age, sex and disability discrimination, workplace harassment, [and] hostile work environment." (Docket Entry No. 37, at 1-2). The District Judge referred the case to the Magistrate Judge for decision on all pretrial, nondispositive motions, and a report and recommendation on any dispositive motions. (Docket Entry No. 6).

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 53), contending: (1) that Plaintiff failed to exhaust administrative remedies as to her disability claims; (2) that Plaintiff's claim for disability discrimination is barred by the statute of limitations; (3) that Plaintiff failed to properly apply for accommodations; (4) that Plaintiff fails to show that she suffered an adverse employment action; (5) that Plaintiff fails to show that she was replaced by someone substantially younger than she or that she was treated differently based upon her age; (6) that Plaintiff fails to show that Defendant discriminated against her on the basis of race; (7) that the alleged conduct was not frequent or severe enough to create a hostile work environment; (8) that Defendant did not know or have any reason to know of the alleged misconduct; (9) that Plaintiff fails to show retaliatory conduct; and (10) that punitive damages are not recoverable from a governmental agency or county. Plaintiff filed a response in opposition. (Docket Entry Nos. 63 and 64). Also, before the Court is Plaintiff's motion for judgment on the pleadings (Docket Entry No. 60), to which Defendant filed a response (Docket Entry No. 65).

## II. SUMMARY OF PERTINENT FACTS[1]

Defendant, Clarksville-Montgomery County School System ("CMCSS"), is a public school system organized and authorized under the laws of the State of Tennessee to provide education to the citizens of Montgomery County, Tennessee. (Docket Entry No. 55, Defendant's Statement of Undisputed Facts, at ¶ 1). On June 7, 2007, Defendant hired Plaintiff, Linda Ellison, an African-American female, who was over the age of forty, to work as a custodian. *Id*. at ¶¶ 2-3. Within a

---

[1]Defendant filed contemporaneously with its motion for summary judgment a statement of undisputed facts (Docket Entry No. 55), in accordance with Local Rule 56.01(b). Plaintiff has not filed a response to Defendant's statement of undisputed facts. Accordingly, Defendant's proffered statements of fact are undisputed for purposes of summary judgment. Local Rule 56.01(f).

year of being employed, Plaintiff was promoted to lead custodian at East Montgomery Elementary School and remained a lead custodian until her retirement in July of 2017. *Id*. at ¶ 4. At the time of Plaintiff's hiring, Yvonne Hackney was the principal of East Montgomery Elementary School. *Id*. at ¶ 5. Hackney retired in June of 2014. *Id*. at ¶ 6. Janet Staggs became principal in the spring of 2015. *Id*. at ¶ 7.

Defendant has formal policies against discrimination and sexual harassment and has procedures for reporting allegations of such conduct. *Id*. at ¶¶ 8-12. Defendant's employees are advised of these policies, which are available on Defendant's website, at the time of their hiring and at annual training. *Id*. at ¶ 13.

Plaintiff testified that Defendant refused to accommodate her disability in 2014 or sometime earlier when Hackney was still principal and Plaintiff's supervisor. *Id*. at ¶¶ 14-15; Docket Entry No. 57, Plaintiff Deposition at, pp. 17-18.[2] Plaintiff testified that she had issues at work with almost "passing out," and her doctor had her wear a Holter monitor to measure her heart rhythm. (Docket Entry No. 57, at pp. 20, 23). Plaintiff was placed on restrictions for a few weeks with a doctor's note. (Docket Entry No. 55, at ¶ 17; Docket Entry No. 57, at p. 23).[3] Plaintiff's doctor restricted her from doing outside work in the heat to prevent over-exertion. *Id*. at ¶ 18. Plaintiff believed that the restrictions were to last to when she returned to her doctor and have the monitor removed. (Docket Entry No. 57, at p. 24). Plaintiff testified that "when it was time for [her] to take off her Holter monitor, [her doctor] let [her] go back to [her] full duties." *Id*. at pp. 25. Plaintiff's doctor

---

[2]Unless otherwise stated, citations are to the Court's ecf pagination. References to actual deposition pages are denoted with a "p.".

[3]Plaintiff did not present a copy of the restrictions from her doctor. (Docket Entry No. 55, at ¶ 19).

diagnosed her as having anxiety attacks. *Id*. at p. 26. Plaintiff testified that after her doctor removed her Holter monitor her restrictions were lifted and she was able to "go back to work and do normal duties." *Id*.; Docket Entry No. 55, at ¶ 21. Plaintiff also testified that Hackney instructed her to go to Central Office to fill out paperwork for restrictions that Plaintiff's doctor gave to Plaintiff, but Plaintiff never went to fill out the disability paperwork. (Docket Entry No. 55, at ¶¶ 16, 23). Plaintiff did not have any other discussions with anyone else at CMCSS about needing an accommodation for her disability. *Id*. at ¶ 20.

On December 9, 2015, Plaintiff filed a discrimination complaint form, accusing Marvin Wilson, a coworker janitor, of sexual harassment. *Id*. at ¶ 26. Plaintiff testified that she initially went to Jason Hodges, CMCSS's operational foreman, to complain about Wilson "refusing at certain times to do his job duties," before telling him about the alleged sexual harassment conduct. (Docket Entry No. 57, at pp. 39-40). At the time of making the complaint, Plaintiff was Wilson's supervisor. (Docket Entry No. 55, at ¶ 28). Plaintiff never reported the alleged sexual harassment at the time it occurred. *Id*. at ¶ 30; Docket Entry No. 57, at pp. 38, 41. Plaintiff continued to work with and supervise Wilson for more than two years following the initial alleged harassment. *Id*. at ¶ 32.

According to Plaintiff, in early 2013, after confiding in Wilson about her financial difficulties, Wilson voluntarily gave her $500.00. *Id.* at ¶ 34; Docket Entry No. 57, at pp. 30-31. Wilson did not ask for anything in return for the $500.00. *Id.* at ¶ 35; Docket Entry No. 57, at p. 32. Approximately two weeks later, Wilson began making advances towards Plaintiff, asking her about her weekend plans. (Docket Entry No. 57, at pp. 32-33). Plaintiff testified that over the next two-plus years Wilson also made sexually suggestive sounds, looked at her breasts and made comments

about her wearing jeans. (Docket Entry No. 55, at ¶ 33; Docket Entry No. 57, at pp. 33-36). Wilson never made any physical advances or touched Plaintiff. *Id*. at ¶ 37.

On December 11, 2015, Jeanine Johnson, the chief human resources officer, received Plaintiff's complaint form regarding Plaintiff's sexual harassment claim against Wilson. *Id*. at ¶ 27. According to Johnson, Defendant CMCSS was unaware of any alleged harassment until Plaintiff filed her report in December 2015. *Id*. at ¶ 31; Docket Entry No. 56-1, Jeanine Johnson Affidavit, at ¶ 15. On December 11, 2015, Johnson met with Plaintiff and advised her that because winter break was starting the following week the investigation would not start until the beginning of January. *Id*. at ¶ 38. Carol M. Joiner, Defendant's human resources general counsel, investigated Plaintiff's complaint. *Id.* at ¶ 39. Joiner verified with Principal Staggs that Plaintiff and Wilson would not be working alone together during the winter break while the staff and students were not at school. *Id*. at ¶ 40. Defendant's schools were closed from December 18, 2015 through January 5, 2016 for winter break. *Id*. at ¶ 41. Plaintiff testified that during winter break she did not know whether Wilson knew that she had made a complaint against him. (Docket Entry No. 57, at p. 43).

Joiner interviewed Plaintiff on January 12, 2016. (Docket Entry No. 55, at ¶ 42). Joiner interviewed Wilson, who denied the allegations. *Id*. at ¶ 43. Joiner also interviewed Plaintiff's supervisor, Hodges, who stated that he did not receive any information or complaints from Plaintiff about any alleged harassment prior to her December 2015 complaint. *Id*. at ¶¶ 44-45. Additionally, Joiner interviewed Staggs, who stated that she did not see or hear anything that would have caused her to believe that Plaintiff was being harassed. *Id*. at ¶¶ 46-47. Plaintiff did not share any information or complaints with Staggs about being harassed prior to Plaintiff's December 2015 Complaint. *Id*. at ¶ 48.

On February 2, 2016, Joiner met with Plaintiff to discuss the findings of the investigation. *Id*. at ¶ 52. Joiner found that Plaintiff's complaint of sexual harassment and hostile work environment was not substantiated. *Id*. at ¶ 51; Docket Entry No. 57, at p. 46. At the meeting, Plaintiff requested that she be transferred to another school. *Id*. at ¶ 53. Joiner and Hodges began working to accommodate Plaintiff's request, and on February 18, 2016, Plaintiff was informed that her transfer request was granted. *Id*. at ¶¶ 54-55. On February 22, 2016, Plaintiff was transferred to Minglewood Elementary School as lead custodian. *Id*. at ¶ 56. Plaintiff had the same duties, responsibilities, pay, benefits and working hours at Minglewood Elementary as she did at East Montgomery Elementary. *Id*. at ¶ 57. Plaintiff lives closer to Minglewood Elementary than to East Montgomery. *Id*. at ¶ 58. Plaintiff testified that she told some people that she was happy at Minglewood and thankful to be there. *Id*. at ¶ 59; Docket Entry No. 57, at p. 86.

On February 17, 2016, Plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission ("THRC"), alleging that she was discriminated against because of her race (African American), gender (female), and age (40 and over). *Id*. at ¶ 65; Docket Entry No. 1, at 18-22. Plaintiff also alleged that she was retaliated against because she filed an internal sexual harassment complaint. *Id*. at ¶ 66. Plaintiff testified that her retaliation claim is based solely on her transfer to Minglewood. *Id*. at ¶ 60; Docket Entry No. 57, at pp. 50-51, 74, 75. Plaintiff did not make any allegation of disability discrimination or failure to accommodate in either her THRC discrimination charge or directly to CMCSS. *Id*. at ¶ 67. Plaintiff testified that the basis of her race discrimination claim is that she is black. *Id*. at ¶ 68; Docket Entry No. 57, at p. 57. As evidence in support, Plaintiff cites that her sexual harassment complaint was not substantiated, Wilson was not

fired and she was transferred, and asserts that if she were white that would not have happened. *Id.* at ¶ 69; Docket Entry No. 57, at pp. 58-59.

Plaintiff testified that no one from CMSS told her that any decisions regarding her employment were made on the basis of her race or age. *Id.* at ¶¶ 70, 72. Plaintiff is not aware of any policies or procedures of Defendant's that she thinks caused discrimination against her on the basis of her race or age. *Id.* at ¶¶ 71, 74. Plaintiff testified that she was not aware of anyone in a similar situation who was younger than she that was treated better or where the outcome was different because that person was younger. *Id.* at ¶ 73; Docket Entry No. 57, at pp. 61-62.

On or about April 12, 2017, Plaintiff voluntarily gave notice that she would be retiring on July 31, 2017. *Id.* at ¶ 75. Plaintiff testified that at the time of filing for retirement she did not feel pressure to retire, but that she "was just ready to retire." (Docket Entry No. 57, at pp. 92, 86). On April 18, 2017, Plaintiff's request was approved. (Docket Entry No. 55, at ¶ 76). On April 20, 2017, Plaintiff filed her action in this Court. (Docket Entry No. 1). On or around June 21, 2017, Plaintiff requested that her retirement date be moved up to July 7, 2017. (Docket Entry No. 55, at ¶ 77). On July 7, 2017, Plaintiff retired from CMCSS. *Id.* at ¶ 78.

### III. STANDARD OF REVIEW

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A factual dispute is

7

material if it "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. The nonmoving party cannot simply "rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial.'" *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To defeat a motion for summary judgment, "the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Anderson*, 477 U.S. at 251). "However, a mere 'scintilla' of evidence in support of the non-moving party's position is insufficient." *Id.* (citing *Anderson*, 477 U.S. at 251). "'The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case.'" *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 (6th Cir. 2013) (quoting *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996) (citing *Celotex*, 477 U.S. at 322)). Finally, "'[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## IV. ANALYSIS

## A. ADA CLAIM/FAILURE TO ACCOMMODATE

Defendant contends that Plaintiff's ADA and failure to accommodate claims should be dismissed because Plaintiff did not exhaust her administrative remedies. "To exhaust administrative remedies under the ADA, the plaintiff must file an EEOC charge within 180 days of the alleged discrimination, or with the state agency within 300 days. . . . The exhaustion of administrative remedies is a condition precedent to an ADA action." *Marcum v. Oscar Mayer Foods Corp.*, 46 F. App'x 331, 333 (6th Cir. 2002) (citations omitted); 42 U.S.C. § 12117(a) (incorporating 42 U.S.C.

§ 2000e-5); 42 U.S.C. § 2000e-5*; El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 463 (6th Cir. 2006). Thus, "[t]he failure to timely exhaust available administrative remedies is an appropriate basis for dismissal of [an] ADA action." *Id.* The Sixth Circuit has held that "because aggrieved employees-and not attorneys-usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010); *see also Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (explaining that while courts liberally construe EEOC charges filed by *pro se* complaints, that fact "'does not mean that a broad reading may not, or should not, be given in cases where a plaintiff has counsel.'" (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 536 (6th Cir.2001))). Therefore, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir.1998).

Here, although Plaintiff timely filed on February 17, 2016 a charge of discrimination based upon race, age and gender with the THRC, an authorized state agency, *see Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 799 (E.D. Tenn.), *reconsideration denied*, 206 F. Supp. 3d 1309 (E.D. Tenn. 2016), *and aff'd*, 899 F.3d 428 (6th Cir. 2018), *and aff'd*, 899 F.3d 428 (6th Cir. 2018), Plaintiff did not include any claim or allegation concerning discrimination on the basis of disability. The alleged discriminatory conduct regarding the failure to accommodate occurred prior to Hackney's retirement in 2014. Plaintiff never filled out disability paperwork at Central Office or have any other discussions with anyone else at CMCSS about needing an accommodation for her disability. The entirety of Plaintiff's THRC charge pertains to

allegations of sexual harassment by Wilson and Defendant's resulting employment-related decisions. There is nothing in the record to show that an ADA claim would be reasonably related to or grow out of the factual allegations in Plaintiff's THRC charge.

Accordingly, the Magistrate Judge concludes that this claim should be dismissed for failure to exhaust.[4]

## B. ADEA CLAIM

Defendant contends that Plaintiff fails to present evidence that Defendant discriminated against her on the basis of age. The Age Discrimination in Employment Act ("ADEA") prohibits an employer from discriminating against an individual "because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff has the burden of showing that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). A plaintiff "may establish a violation of the ADEA by either direct or circumstantial evidence." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

---

[4]In his July 23, 2018, Order (Docket Entry No. 69), the Magistrate Judge noted that he would consider Plaintiff's argument that Defendant "waived any statute of limitation for failure to exhaust administrative remedies" insofar as Plaintiff "argues there was a waiver of affirmative defenses." *Id.* "Failure to exhaust administrative remedies in a timely manner is an affirmative defense, and the defendant bears the burden of pleading and proving this failure." *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008); *see* Fed. R. Civ. P. 8(c)(1). In its answer, Defendant specifically pled that "Plaintiff did not include discrimination based on disability in her charge of discrimination filed with the Tennessee Human Rights Commission. Plaintiff's suit was not filed until April 20, 2017, well past the time within which Plaintiff must have asserted such a claim." (Docket Entry No. 40, at 10). Defendant also pled "that the Plaintiff's claims are barred by the applicable statute of limitations," and as to Plaintiff's sexual harassment claim, that "Plaintiff did not timely file a charge of discrimination with the EEOC/THRC with respect to some or all of the alleged actions, and denies that all of the charges of discrimination were timely filed with the EEOC/THRC, and therefore, avers that certain conduct . . . were not filed within the time required by law." *Id.* at 10-11. Plaintiff's argument is without merit.

Despite her assertions otherwise, Plaintiff has not offered direct evidence supporting her claim that she suffered discrimination because of her age. Therefore, absent direct evidence, where a plaintiff seeks to establish discrimination through indirect evidence, courts employ the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) burden-shifting framework. *Id.* at 622. To establish a *prima facie* case of age discrimination, a plaintiff must prove (1) that she is a member of a protected class, that is, she is at least forty years of age; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that she was replaced by someone outside of the protected class or that she was treated differently than similarly situated employees outside the protected class. *Brown v. Metro. Gov't of Nashville & Davidson Cty.*, 722 F. App'x 520, 527 (6th Cir. 2018) (citations omitted); *Johnson v. Franklin Farmers Co-op.*, 378 F. App'x 505, 508 (6th Cir. 2010) (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008)). "An allegation that the plaintiff was replaced by a younger individual supports an inference of discrimination only if the difference in age is significant." *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). The Sixth Circuit has established a bright-line rule where "'in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant.'" *Id.* at 284 (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003)). "However, while an age difference of ten or more years is generally considered significant, replacement of the employee by a person who is six to ten years her junior must be considered on a case-by-case basis." *Id.* (citations omitted).

After a plaintiff establishes a *prima facie* case of age discrimination,

[t]he burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment decision. If the employer meets this burden, "the

11

employee then bears the burden of rebutting this proffered reason by proving that it was pretext designed to mask discrimination." At all times, the plaintiff retains the burden of persuasion to demonstrate that the adverse employment decision was made because of her age.

*Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 704 (6th Cir. 2016) (citations omitted).

Defendant contends that Plaintiff fails to show that she suffered an adverse employment action or to present any evidence to show that any employment decision was motivated by her age. Defendant contends that Plaintiff fails to show that she was replaced by someone substantially younger than she or that she was treated differently than similarly situated employees outside the protected class.

The Sixth Circuit defines an adverse employment action as "an action 'that results in a materially adverse change in the terms and conditions of plaintiff's employment' such as 'a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities.'" *Love v. Elec. Power Bd. of Chattanooga, EPB*, 392 F. App'x 405, 408 (6th Cir. 2010) (citation omitted). "A 'mere inconvenience or an alteration of job responsibilities' is not enough to constitute an adverse employment action." *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (citations omitted); *Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006) ("A '*de minimis* employment' action is 'not materially adverse and, thus, not actionable.' In other words, a 'bruised ego' caused by trivial employment actions is not sufficient.") (citations omitted). "An adverse employment action may be established by a 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Schram v. Schwan's Sales Enterprises, Inc.*, 124 F. App'x 380, 385 (6th Cir. 2005); *Lee v. Cleveland Clinic Found.*, 676 F. App'x 488, 494 (6th Cir. 2017); *White v. Baxter*

*Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) ("In general, 'a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary.'" (quoting *Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007))). "Under this definition, . . . a purely lateral transfer or denial of the same, which by definition results in no decrease in title, pay or benefits, is not an adverse employment action for discrimination purposes." *Momah v. Dominguez*, 239 F. App'x 114, 123 (6th Cir. 2007) (citing *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)).

"'[R]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims.'" *Obnamia v. Shinseki*, 569 F. App'x 443, 446 (6th Cir. 2014) (citations omitted). The Supreme Court has held that "'[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case,' and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Deleon*, 739 F.3d at 919 (quoting *Burlington Northern and Santa Fe Railway Company v. White*, 548 U.S. 53, 71 (2006) (internal quotation marks omitted)). The Sixth Circuit has held that "a transfer may classify as an adverse employment action where it constitutes a 'constructive discharge.'" *Id.* (citation omitted). In such cases, "for an employee to be constructively discharged, the working conditions "'must be objectively intolerable to a reasonable person.'" *Id.* (citation omitted).

However, the Sixth Circuit "has not foreclosed the possibility that a transfer not rising to the level of a constructive discharge might nonetheless constitute a tangible employment action." *Id.* In those cases, courts focus on "whether there are 'other indices that might be unique to the particular situation' which could turn what would ordinarily not be an adverse employment action

into one." *Id.* (citation omitted). To be an adverse employment action, "[a]t a minimum, the employee must be able to show a quantitative or qualitative change in the terms of the conditions of employment." *Id.* Thus, "an employee's transfer may constitute a materially adverse employment action, even in the absence of a demotion or pay decrease, so long as the particular circumstances present give rise to some level of objective intolerability." *Id.* "Importantly, however, an individual's 'subjective impression concerning the desirability of one position over another' is insufficient to render an employer's action materially adverse." *Freeman*, 200 F. App'x at 442 (citations omitted). Instead, courts "determine whether a particular employment action was 'objectively intolerable to a reasonable person. . . .' In short, the action must have a 'significant detrimental effect' on the employee's status, as evidenced by objective factors, not subjective impressions." *Id.* at 442-43 (citations omitted).

Here, the undisputed facts show that Plaintiff requested that she be transferred to another school. Plaintiff transferred to Minglewood Elementary School where she was lead custodian. There, Plaintiff maintained the same duties, responsibilities, pay, benefits and working hours as she did at East Montgomery Elementary. Minglewood Elementary is closer to where Plaintiff lives than East Montgomery, and Plaintiff communicated to some people that she was happy at Minglewood. Plaintiff fails to show that she suffered an adverse employment action. Further, Plaintiff fails to present any evidence that she was replaced by someone significantly younger or that she was treated differently than a similarly situated employee outside the protected class.

Accordingly, for these reasons, the Magistrate Judge concludes that Plaintiff's ADEA claim should be dismissed.

### C. TITLE VII RACE CLAIM

Under Title VII, an employer cannot discriminate against any individual with respect to the employee's compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). "In a disparate treatment case, liability depends on whether the protected trait [here, race] actually motivated the employer's decision. . . . Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (citations omitted). A plaintiff may establish a Title VII violation by either direct or circumstantial evidence. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016). Absent direct evidence, like here, claims under Title VII are also evaluated using the *McDonnell Douglas* test. *Deleon*, 739 F.3d at 918. Thus, a plaintiff must prove that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee. *Id.*; *Jackson*, 814 F.3d at 775-76. Defendant contends that Plaintiff cannot establish the second and fourth elements.

As discussed previously, Plaintiff fails to show that she suffered an adverse employment action. Further, Plaintiff fails to present any evidence that she was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee. Accordingly, for the reasons previously discussed, the Magistrate Judge concludes that Plaintiff's race discrimination claim should be dismissed.

## D.  SEXUAL HARASSMENT BASED ON HOSTILE WORK ENVIRONMENT CLAIM

To establish a prima facie case of sexual harassment based on hostile work environment by a coworker, a plaintiff must establish that (1) she was a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment, that is, the harassing behavior was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and (5) the defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008); *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 872 (6th Cir. 1997); *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 746 (6th Cir. 2008) (noting that "hostile work environment cases make a distinction between sexual harassment caused by supervisors and sexual harassment caused by coworkers"). Defendant contends that Plaintiff fails to show that the alleged harassment was sufficiently severe or pervasive that interfered with her work performance, or that Defendant knew of the alleged sexual harassment and failed to take corrective action.

Under Title VII, a hostile work environment occurs "when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (citation omitted). A plaintiff must show that the work environment was both objectively and subjectively hostile; that is, "the harassing behavior was 'severe or pervasive' enough to create an environment that a reasonable person would find objectively hostile or abusive, and that he or she subjectively regarded the environment as

abusive." *Hawkins*, 517 F.3d at 333 (citation omitted).  To determine whether a work environment is "hostile" or "abusive," courts consider the totality of circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Johnson v. Donahoe*, 642 F. App'x 599, 612 (6th Cir. 2016) (citations omitted); *Smith*, 813 F.3d at 309. "In hostile work environment cases, [courts] consider the 'work environment as a whole' rather than individual instances of harassment." *Smith*, 813 F.3d at 310 (citations omitted). "'Isolated incidents, however, unless extremely serious will not amount to discriminatory changes in the terms or conditions of employment.'" *Bradley v. Arwood*, 705 F. App'x 411, 431 (6th Cir. 2017) (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)).

Plaintiff alleges that Wilson, her coworker, sexually harassed her by asking her about her weekend plans, making sexually suggestive sounds, looking at her breasts and making comments about her wearing jeans.  The undisputed facts reflect that Wilson never physically threatened or touched Plaintiff, Plaintiff never reported the alleged conduct until over two years later, and Plaintiff continued to work and supervise Wilson for over two years after the alleged conduct began.  In *Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000), the Sixth Circuit held that there was no liability where the plaintiff was subject to four separate incidents over four years by his supervisor, which involved the following: the plaintiff's supervisor rubbing the plaintiff's shoulder while in the supervisor's office; the supervisor grabbing the plaintiff's buttocks and telling him that "she controlled [the plaintiff's] ass and she would do whatever she wanted with it;" the supervisor telling the plaintiff that he should come over to test out her whirlpool with her; and that the supervisor told the plaintiff that he should come over to enjoy the pool without his girlfriend. *Id.*

at 458-59, 464. The Sixth Circuit concluded that "[w]hile the allegations [we]re serious, they d[id] not constitute conduct that [wa]s pervasive or severe." *Id.* at 464. Accordingly, based upon the undisputed facts, the Magistrate Judge concludes that Plaintiff has failed to establish that the alleged conduct rises to the level of severe or pervasive whereas to unreasonably interfere with Plaintiff's work performance.

Further, based upon the undisputed facts, Plaintiff cannot establish employer liability. When an employer responds to charges of coworker sexual harassment, "[t]he act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment." *Blankenship*, 123 F.3d at 873. "Thus, when an employer responds to charges of co-worker sexual harassment, the employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Id.*; *Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 371 (6th Cir. 2014); *Hawkins*, 517 F.3d at 338. "'Generally, a response is adequate if it is reasonably calculated to end the harassment.'" *Fox v. Yates Servs., LLC*, No. 17-5226, 2017 WL 5466657, at *2 (6th Cir. Oct. 31, 2017) (citations omitted). "Steps that would 'establish a base level of reasonably appropriate corrective action' may include promptly initiating an investigation to determine the factual basis for the complaint, 'speaking with the specific individuals identified by [the complainant], following up with [the complainant] regarding whether the harassment was continuing, and reporting the harassment to others in management.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (citations omitted and alterations in original).

Plaintiff testified that she did not report to anybody the alleged sexual harassment until December 9, 2015. Plaintiff continued to work with and supervise Wilson for more than two years

following the alleged initial harassment. Johnson advised Plaintiff that the investigation would not start until after winter break. Joiner verified with the principal that Plaintiff and Wilson would not be working alone together during the winter break. Defendant conducted an internal investigation into the matter that included interviewing Plaintiff and Wilson and others. Ultimately, Joiner determined Plaintiff's sexual harassment claim to be unsubstantiated. However, Defendant granted Plaintiff's request to be transferred to another school, and shortly thereafter Plaintiff was transferred to Minglewood Elementary School as lead custodian where she retained the same duties, responsibilities, pay, benefits, and working hours. Minglewood was also closer to her home. The undisputed facts further show that Defendant has a formal policy and procedure for reporting sexual harassment and employees are advised of these policies, which are available on Defendant's website, at the time of their hiring and at annual training.

Thus, based upon the undisputed facts, the Magistrate Judge concludes that Plaintiff has failed to show that Defendant knew or should have known of the alleged sexual harassment by Wilson and failed to take prompt and appropriate corrective action. Plaintiff cites some prior sexual harassment complaints against Wilson made by other employees in January 2008, March 2008 and September 2013. (Docket Entry No. 64, at 13; Docket Entry No. 1, at 35-40). Plaintiff's assertion is immaterial as these complaints did not involve Plaintiff, some happened years earlier, and Plaintiff admitted that she never reported any misconduct by Wilson until December 2015. Further, Plaintiff fails to show that Defendant did not implement prompt and appropriate corrective action. Defendant conducted an investigation and even after finding the allegations unsubstantiated, accommodated Plaintiff by granting her request to transfer, where she retained her title, pay, benefits and number of hours.

Accordingly, for the reasons stated above, the Magistrate Judge concludes that this claim should be dismissed.

### E. TITLE VII RETALIATION CLAIM

Under Title VII, an employer cannot retaliate against an employee who engages in any activity protected under Title VII. 42 U.S.C. § 2000e-3(a). Title VII's anti-retaliation provision prohibits retaliation against the employee for the employee's opposition to any unlawful employment practice or because the employee has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under Title VII. *Id*. "A plaintiff must demonstrate that her opposition was reasonable and based on a good-faith belief that the employer was acting in violation of Title VII." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009); *Johnson v. University of Cincinnati*, 215 F.3d 561, 579-580 (6th Cir. 2000) (citation omitted) ("'[T]he manner of opposition must be reasonable, and that the opposition be based on "a reasonable and good faith belief that the opposed practices were unlawful.' In other words, a violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful.").

Absent direct evidence, Plaintiff must prove her claim using the *McDonnell Douglas* burden-shifting framework. To establish a *prima facie* case of retaliation, Plaintiff must show: (1) that she engaged in an activity protected by Title VII; (2) that the exercise of her civil rights was known to Defendant; (3) thereafter Defendant took an employment action adverse to Plaintiff or subjected Plaintiff to severe or pervasive retaliatory harassment; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Barrett*, 556 F.3d at 516. "To establish the third element of the *prima facie* Title VII retaliation claim, 'a plaintiff must

show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) (quoting *Burlington Northern & Santa Fey Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  As to the fourth element, "[i]n determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action." *Barrett*, 556 F.3d at 516-17. However, "temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." *Tuttle*, 474 F.3d at 321.

As discussed previously, Plaintiff did not suffer an adverse employment action and, thus, cannot establish her *prima facie* case of Title VII retaliation.  After transferring to Minglewood Elementary, on or about April 12, 2017, Plaintiff voluntarily gave notice that she would be retiring on July 31, 2017.  Accordingly, the Magistrate Judge concludes that this claim should be dismissed.

## V. RECOMMENDATION

Accordingly, for these reasons, the Magistrate Judge **RECOMMENDS** that Defendant's motion for summary judgment (Docket Entry No. 53) be **GRANTED**, Plaintiff's motion for judgment on the pleadings (Docket Entry No. 60) be **DENIED,** and that this action be **DISMISSED WITH PREJUDICE.**

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein.  A party shall respond to the objecting party's objections to this R&R within

fourteen (14) days after being served with a copy thereof.  Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal.  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

      **ENTERED** this 16th day of October, 2018.


/s/    Joe  B.  Brown           
JOE B. BROWN
United States Magistrate Judge