**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **LINDA F. ELLISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:17-cv-00729** |
| | ) | **Judge Aleta A. Trauger** |
| **CLARKSVILLE MONTGOMERY** | ) | |
| **COUNTY SCHOOL SYSTEM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM</u>**

The magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 70) on October 16, 2018, recommending that the defendant's Motion for Summary Judgment (Doc. No. 53) be granted, the plaintiff's Motion for Judgment on the Pleadings (Doc. No. 60) be denied, and this case be dismissed. *Pro se* plaintiff Linda Ellison has filed timely Objections to the R&R (Doc. No. 71), to which the defendant has responded (Doc. No. 72).

For the reasons set forth herein, the court will overrule the plaintiff's objections and accept the R&R. The defendant's Motion for Summary Judgment will be granted, the plaintiff's Motion for Judgment on the Pleadings will be denied, and this case will be dismissed with prejudice.

## I.      Factual and Procedural Background

The court presumes familiarity with the R&R and summarizes herein those facts and events strictly relevant to the plaintiff's objections. In her Second Amended Complaint, the plaintiff generally alleges that she is a disabled African American woman over the age of 40 and that she was employed by defendant Clarksville Montgomery County School System

("CMCSS") as Custodian and then Lead Custodian from June 2007 through 2016, when she retired. CMCSS is a public school system organized and authorized under the laws of the State of Tennessee to provide education to the citizens of Montgomery County, Tennessee. Plaintiff was employed by CMCSS at East Montgomery Elementary School during most of her years of employment, but she was working at Minglewood Elementary at the time of her retirement. She asserts claims against CMCSS under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans With Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA") for "age, sex and disability discrimination, workplace harassment, [and] hostile work environment." (Doc. No. 36, at 1–2.) After the case was filed, the matter was referred to the magistrate judge for decision on all pretrial, non-dispositive motions and for a report and recommendation on any dispositive motions. (Doc. No. 6.)

Following a contentious discovery period, CMCSS filed a Motion for Summary Judgment (Doc. No. 53), accompanied by a Memorandum of Law (Doc. No. 54), Statement of Undisputed Material Facts (Doc. No. 55), the Affidavit of Jeanine Johnson (Doc. No. 56-1), and Linda Ellison's Deposition transcript (Doc. No. 57). On the same day, the plaintiff filed a Motion for Judgment on the Pleadings and supporting Memorandum. (Doc. Nos. 60, 61.) Ellison responded to the defendant's Motion for Summary Judgment. (Doc. Nos. 63, 64.) Although she did not respond to the defendant's Statement of Undisputed Material Facts, she submitted her own Affidavit in support of her Response. (Doc. No. 64-1.) The defendant filed a Reply. (Doc. No. 66.) The defendant also responded to Ellison's Motion for Judgment on the Pleadings. (Doc. No. 65.)

CMCSS seeks summary judgment in its favor on the grounds that: (1) Ellison failed to exhaust administrative remedies in connection with her ADA claims; (2) her ADA disability

discrimination claim is barred by the statute of limitations; (3) the plaintiff cannot make out a *prima facie* case of disability discrimination; (4) the plaintiff cannot make out a *prima facie* case of age discrimination for purposes of her ADEA claim; (5) the plaintiff cannot make out a *prima facie* case of race discrimination under Title VII; (6) she cannot establish a *prima facie* case of sex discrimination or hostile work environment under Title VII; and (7) she fails to establish a *prima facie* case of Title VII retaliation against her former employer because, again, she cannot show that she suffered an adverse employment action.

In reviewing the defendant's Motion for Summary Judgment, the magistrate judge noted that the plaintiff had not responded to the defendant's Statement of Undisputed Material Facts, as required by Local Rule 56.01. Also under Rule 56.01, the magistrate judge accepted the defendant's proffered statements of fact as undisputed for purposes of summary judgment. Based on these undisputed facts, the magistrate judge concluded that (1) the plaintiff's ADA and failure-to-accommodate claims should be dismissed because the plaintiff did not exhaust her administrative remedies;[1] (2) the plaintiff's ADEA claim should be dismissed because the plaintiff has not established a *prima facie* case of age discrimination; (3) the plaintiff's Title VII sex discrimination claim is subject to dismissal on the grounds that the plaintiff has not shown that she suffered an adverse employment action and failed to present evidence that she was replaced by someone outside the protected class or treated differently from any similarly situated, non-protected employee; (4) the plaintiff's claim that a co-worker's sexual harassment of her created a hostile work environment for which the defendant is liable is subject to dismissal, because the plaintiff has not established that the alleged harassment was sufficiently severe and pervasive to create an objectively hostile or abusive environment, that the plaintiff herself subjectively regarded the environment as intolerable, or that

---

[1] In making that determination, the magistrate judge also rejected the plaintiff's argument that the defendant waived the affirmative defenses based on the plaintiff's failure to exhaust and the expiration of the statute of limitations. (*See* Doc. No. 70, at 10 n.4.)

her employer responded inappropriately to her complaints about her co-worker's conduct; and (5) the defendant is entitled to summary judgment on the Title VII retaliation claim because the plaintiff cannot show that she suffered any type of adverse employment action. Based on these conclusions, the magistrate judge recommends that the defendant's Motion for Summary Judgment be granted and that the plaintiff's Motion for Judgment on the Pleadings be denied. (Doc. No. 70, at 21.)

## II.     The Plaintiff's Objections

The plaintiff asserts the following objections to the magistrate judge's findings and recommendations:

> (1) The magistrate judge generally erred in "not crediting Plaintiff a review of the record in the light most favorable to her," accepting her evidence as true, and drawing all reasonable inferences in her favor. (Doc. No. 71, at 1.)

> (2) The magistrate judge failed to consider the plaintiff's Motion for Judgment on the Pleadings and Affidavit as a response to the defendant's Statement of Undisputed Material Facts.

> (3) Summary judgment on the plaintiff's ADA claims is not appropriate, because

>> (a) material factual disputes exist as to whether she is disabled, whether the employer knew or had reason to know of her disability, whether she requested an accommodation, and whether the employer failed to make a reasonable accommodation, for purposes of the plaintiff's *prima facie* case;

>> (b) even though she did not allege ADA discrimination in her EEOC charge, there is at least a material factual dispute as to whether the relevant acts were or should have been included in a reasonable EEOC investigation of the charge; and

>> (c) failure to exhaust does not authorize the court to dismiss a claim on jurisdictional grounds, and CMCSS waived its affirmative defenses based on the statute of limitations and failure to exhaust in its response to the Complaint before the Tennessee Human Rights Commission or in its Answer to the Second Amended Complaint.

> (4) Summary judgment on her retaliation claim is not warranted, because CMCSS made "numerous adverse employment decision[s] (subjecting her to sexual harassment, retaliating against her) based upon the filing of a sexual harassment complaint," including by transferring her to a different school and denying her request for an accommodation of her disability by assigning her to light or modified duty. (*Id.* at 17.)

> (5) The magistrate judge erred in recommending summary judgment on the plaintiff's

sexual harassment claims, because

> (a) there is a material factual dispute as to whether her colleague sexually harassed her;

> (b) there is a material factual dispute as to whether CMCSS was aware of the alleged harassment prior to December 2015; and

> (c) CMCSS did not promptly investigate the plaintiff's sexual harassment claim and left the plaintiff and her "aggressor together, without any supervisory or managerial staff being present for a total of thirty-three (33) days during the Christmas holidays." (*Id.* at 16–17.)

(6) The defendant fails to present any argument in support of dismissal of her work place harassment and hostile work environment claim, thus precluding summary judgment on the claims related to allegations that agents of CMCSS (Yvonne Hackney, Carol Joiner, and Jeanine Johnson) tried to terminate her employment "based upon unsupported facts . . . during a long time period." (*Id.* at 18.)

The plaintiff does not object to the recommended dismissal of her age- and race-discrimination claims.

## III. Standard of Review

When a party files objections to a magistrate judge's report and recommendation regarding a dispositive motion, the district court must review *de novo* any portion of the report and recommendation to which objections are "properly" lodged. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(B) & (C). Only "specific written objections" to the magistrate judge's proposed factual findings and legal conclusions are "proper" under Rule 72(b). Likewise, the applicable statute contemplates *de novo* determination only "of those portions of the report or *specified* proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (emphasis added). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## IV. Discussion

### (1) Improper Standard of Review

Regarding the plaintiff's objection that the magistrate judge generally violated the summary judgment standard of review by failing to view the record in the light most favorable to her and to draw all reasonable inferences in her favor, the court finds that this objection is so general and conclusory that it does not qualify as a properly lodged objection.

**(2)    Application of Local Rule 56.01**

The plaintiff's objection that the magistrate judge erred in failing to consider her Motion for Judgment on the Pleadings and Affidavit as a response to the defendant's Statement of Undisputed Material Facts is without merit. Local Rule 56.01(b) specifically requires the party moving for summary judgment to submit, with its motion, a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial.[2] Each fact in the statement must

> be set forth in a separate, numbered paragraph. Each fact shall be supported by specific citation to the record. After each paragraph, the word "response" shall be inserted and a blank space shall be provided reasonably calculated to enable the non-moving party to respond to the assertion that the fact is undisputed.

*Id.* The defendant complied with this rule.

The Local Rules also govern the non-moving party's response to a statement of undisputed facts:

> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. *The response must be made on the document provided by the movant or on another document in which the nonmovant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant.* . . . Such response shall be filed with the papers in opposition to the motion for summary judgment.

---

[2] The revised Local Rules became effective on August 14, 2018. The parties completed briefing on the pending motions before the end of July 2018. Accordingly, the quotations and citations herein are to the Local Rules that became effective on July 15, 2016, rather than to the revised Rules.

L.R. 56.01(c) (emphasis added).

The plaintiff did not comply with this rule, and her Motion for Judgment on the Pleadings and Affidavit do not constitute a reasonable substitute or excuse her failure to comply. Under Local Rule 56.01(g) (2016), a failure to respond to the moving party's statement of material facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment." The magistrate judge did not err in applying that rule in this case.[3]

### (3) Dismissal of the ADA Claim

The magistrate judge's recommendation that summary judgment be granted on the plaintiff's ADA claim is premised entirely on the plaintiff's failure to exhaust administrative remedies with respect to that claim. The plaintiff's assertions that she has at least shown the existence of a material factual dispute as to each element of a *prima facie* claim of failure to accommodate her disability are beside the point. Likewise, her argument that failure to exhaust is not a jurisdictional prerequisite is irrelevant, because the magistrate judge does not recommend dismissing the ADA claim based on a lack of subject-matter jurisdiction.

Rather, the magistrate judge specifically rejected the plaintiff's argument that the defendant waived the failure-to-exhaust defense. The court has reviewed this issue and the court's record *de novo* and agrees that, assuming that a failure to raise exhaustion in an answer amounts to waiver of the defense, the defendant very clearly—and repeatedly—stated in the Answer to the Second Amended Complaint: "Plaintiff's charge of discrimination did not include disability discrimination allegations. Any such allegations or claims must be dismissed as a matter of law." (Doc. No. 40, at 2–3 ¶¶ V, XI; *see also id.* at 7, 10.) The plaintiff was placed on notice that the defendant did not believe that she exhausted her ADA claim in her administrative proceedings. The defendant did not

---

[3] By inadvertence, the magistrate judge cited to the revised Local Rule 56.01(f) that went into effect in August 2018. However, that provision is identical in all material respects to the rule previously designated as Local Rule 56.01(g), quoted herein.

waive this defense.

Nor did the magistrate judge err in concluding that the plaintiff's administrative complaint did not put the EEOC on notice of a potential ADA claim. As a general rule, a plaintiff cannot bring suit for employment discrimination claims that are not included in the EEOC charge. *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 627 (6th Cir. 2013). However, "because aggrieved employees—and not attorneys—usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). The plaintiff argues that her ADA claim could be reasonably expected to grow out of the claims she did assert in the EEOC charge. The ALJ considered this argument and noted that, in the EEOC charge she filed in February 2016, Plaintiff alleged discrimination based on race, age, and gender and that the entirety of her charge pertained to allegations of sexual harassment and the defendant's resulting employment-related decisions. The magistrate judge correctly concluded that "[t]here is nothing in the record to show that an ADA claim would be reasonably related to or [expected to] grow out of the factual allegations in Plaintiff's THRA charge." (Doc. No. 70, at 10.) The plaintiff's objection that the magistrate judge erred in finding that her ADA claim was subject to dismissal based on a failure to exhaust administrative remedies, besides simply reiterating an argument already submitted to the magistrate judge, is without merit.

### (4) Retaliation

The plaintiff objects to the dismissal of her retaliation claim, asserting that CMCSS made "numerous adverse employment decision[s] . . . based upon the filing of a sexual harassment complaint," including transferring or reassigning her to a different school and "failing to provide her disability request accommodations." (Doc. No. 71, at 17.)

Regarding the latter, there are no allegations in the pleadings and no evidence in the factual record that the plaintiff requested accommodations for a disability *after* she submitted her sexual

harassment complaint. As for her claim that her transfer was retaliatory, the magistrate judge recommends dismissal of the retaliation claim on the basis that the reassignment was not an adverse action of the type that will support a retaliation claim. That conclusion was legally and factually correct.

To establish a *prima facie* case of retaliation under Title VII, the plaintiff must demonstrate that: "(1) [s]he engaged in activity protected by Title VII; (2) h[er] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). The "materially adverse action" element of a Title VII retaliation claim is substantially different from the "adverse employment action" element of a Title VII discrimination claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007). Under the former, Plaintiff need only show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 57. The standard is objective. *Id.* at 68.

There is no dispute here that the plaintiff reported sexually harassing conduct by a coworker, which constituted protected activity, and that her employer was aware of that report. The question is whether her reassignment from East Montgomery Elementary School to Minglewood Elementary School constituted a materially adverse action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* In defining "materially adverse" in the retaliation context, the Supreme Court has noted that things like "petty slights," "snubbing" and "general antipathy" cannot be construed as materially adverse. *Id.* In *White*, while the Court found the plaintiff's reassignment from the position of forklift operator to that of standard track laborer to be materially adverse, it also noted that "reassignment of job duties is not automatically actionable."

*Id.* at 71. Rather, "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (internal quotation marks and citation omitted). That is, "[c]ontext matters." *Id.* at 69. The reassignment in *White* could be considered retaliatory because there was "considerable evidence" in the record that

> the track labor duties were . . . more arduous and dirtier; that the forklift operator position required more qualifications, which is an indication of prestige; and that the forklift operator position was objectively considered a better job and the male employees resented [the plaintiff] for occupying it.

*Id.* at 71 (internal quotation marks and citations omitted).

Following *White*, but in the context of Title VII discrimination rather than retaliation claims, the Sixth Circuit has held that "[t]ransfers can be considered adverse actions if they are accompanied by a change in salary, benefits, title, or work hours, 'significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Arnold v. City of Columbus*, 515 F. App'x 524, 532 (6th Cir. 2013) (quoting *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). Other courts specifically applying *White* in the retaliation context universally agree that a lateral transfer constitutes a materially adverse action for purposes of a *prima facie* retaliation claim only if it results in "materially adverse consequences affecting the terms, conditions, or privileges of the plaintiff's employment." *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 607 (D.C. Cir. 2010) (citations and internal quotation marks omitted); *see also Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 729 (7th Cir. 2009) (finding that the plaintiff could not establish *prima facie* retaliation claim where, "unlike the employee in [*White*], Lucero was not reassigned to a position consisting of objectively less desirable duties [but, instead,] continued to teach the same academic subject in the same building and under the same conditions after her reassignment [and] did not suffer a cut in pay, benefits, or privileges of employment"); *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 209–10 (2d Cir. 2006) (finding a triable issue of fact as to whether job

reassignment was materially adverse, where the plaintiff kept his job title but was no longer "allowed to perform the broad discretionary and managerial functions of [his] position, no one would report to him, and he would be forced to do work normally performed by clerical and lower-level personnel").

In this case, the plaintiff requested a transfer. Even though she claims she changed her mind before the transfer was effected, there is no dispute that the reassignment did not result in a materially adverse change in her working conditions. She was Lead Custodian at East Montgomery, and she retained the position of Lead Custodian after her transfer to Minglewood. She kept the same job duties, salary, benefits, and hours. (Ellison Dep. 52, Doc. No. 57.[4]) She testified, in fact, that her hours were even more flexible at Minglewood than they had been at East Montgomery. (*See id.* ("Well, when I got to Minglewood, they let me sort of tell them what time I wanted to work.").) The distance from her home to work was shorter after her transfer. (*Id.* at 75.) She supervised the same number of employees after her transfer, and she received positive reviews and positive feedback from her supervisors after her transfer. (*Id.*) The plaintiff confirms that her transfer to Minglewood is the only basis for her retaliation claim (*id.*), but she offers no evidence that the transfer to Minglewood was an objectively adverse action of the type that would deter a person of ordinary firmness from reporting discrimination.

The magistrate judge did not err in concluding on the basis of the undisputed facts that the plaintiff failed to establish that the defendant took a materially adverse action against the plaintiff as a result of her engaging in protected activity.

**(5)     Dismissal of Sexual Harassment Claim**

The plaintiff argues that there is a material factual dispute as to whether she was sexually harassed and as to whether her employer knew about the conduct and took appropriate remedial action. Specifically, she claims that other employees had previously submitted sexual harassment

---

[4] The deposition transcript provided is in condensed format. The page numbers provided are from the original transcript.

complaints against Wilson, as a result of which CMCSS "knew or should have known of the risk that unwelcome sexual behavior on the part of agent Wilson would occur" (Doc. No. 71, at 14); that CMCSS's investigative report established that other teachers were made uncomfortable by Wilson; that CMCSS did not follow its own policies, did not "promptly investigate" her allegations, and left her alone with her alleged aggressor "without any supervisory or managerial staff being present for a total of thirty-three days during the Christmas holidays (*id.* at 15–17).

The factual record establishes that the plaintiff made a formal report against co-worker Marvin Wilson, accusing him of sexual harassment, on December 10, 2015. (Ellison Dep. 38–40, Doc. No. 57.) The form was received by the defendant's Chief Human Resources Officer Jeanine Johnson on December 11, 2015. (Johnson Aff. ¶ 11, Doc. No. 56-1.) Johnson met with Ellison when she delivered the sexual harassment complaint and advised her that, because the school's winter break was starting the following week, the investigation into her allegations would not start until the beginning of January. (*Id.* ¶ 19.) The complaint was investigated by CMCSS Human Resources General Counsel, Carol M. Joiner. (*Id.* ¶ 20; Ellison Dep. 42–43.) Joiner verified with CMCSS Principal Staggs that Ellison and Wilson would not be working alone together during the winter break while staff and students were not at school.[5]

Joiner interviewed Ellison on January 12, 2016. She then interviewed Wilson, who denied the allegations. (Johnson Aff. ¶¶ 22, 23.) Joiner interviewed the plaintiff's supervisor, Jason Hodges. (*Id.* ¶ 24.) Hodges had never received any prior information or complaints from Ellison about Wilson's

---

[5] In her Affidavit, which the magistrate judge did not consider, the plaintiff alleges that she and Wilson were "left alone unsupervised, with no management or supervisors, . . . from 12/09/2015 to 02/02/2016." (Ellison Aff. ¶ 8, Doc. No. 64-1.) This statement is implausible in light of the undisputed fact that the school was closed for at least two weeks of that time period. (*See* Johnson Aff. ¶ 21 (school was closed from December 18, 2015 through January 5, 2016); Ellison Dep. 43 (school was closed from December 23, 2015 until January 2, 3 or 4, 2016).) Moreover, Ellison also admits that, because of their respective work schedules, her shift overlapped with Wilson's by four hours or less each day. (*See* Ellison Dep. 47.)

behavior. (*Id.*) Joiner interviewed the school principal, Janet Staggs, and two other individuals whom the plaintiff identified as having knowledge about Wilson's harassing conduct. (*Id.* ¶ 26.) There was no security video footage to substantiate the plaintiff's allegations. (*Id.* ¶ 27.) Joiner met with Ellison on February 2, 2016 to discuss the findings of her investigation. Joiner explained to Ellison that it was her word against Wilson's, because he denied the allegations and there were no witnesses. (Ellison Dep. 46.) As a result, Joiner was unable to substantiate the allegations. (*Id.*) Joiner also explained to her that Jason Hodges and Principal Staggs would work with Ellison and Wilson "to work out a plan . . . so they could work together as a team." (Ellison Dep. 48.) At that time, the plaintiff requested to be transferred to another school. (*Id.* at 49.) Although she claims she later changed her mind and wanted Wilson to be transferred instead, the plaintiff admits that she initially requested a transfer. (*Id.*) Ellison transferred to Minglewood Elementary as Lead Custodian on February 22, 2016. (*Id.* at 51.)

The plaintiff asserts a claim of sexual harassment by a co-worker, allegedly giving rise to a hostile work environment. To establish a *prima facie* case of sexual harassment based on the creation of a hostile work environment by a co-worker, a plaintiff must establish that (1) she was a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment, that is, the harassing behavior was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and (5) the defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). The magistrate judge recommends dismissal of the claim, first, because the undisputed facts fail to establish that the conduct as alleged by the plaintiff was sufficiently severe or pervasive to unreasonably interfere with the plaintiff's work performance and, second, because the plaintiff cannot establish employer liability.

### (a)    Whether the Alleged Harassment Was Sufficiently Severe or Pervasive

The Sixth Circuit has explained that a hostile work environment exists where

> the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. . . . Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Virgilio v. Potter*, 59 F. App'x 678, 681 (6th Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23 (1993)) (internal quotation marks and citations omitted).

There is both an objective and a subjective prong to this standard. In other words, "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Black v. Zaring Homes*, 104 F.3d 822, 826 (6th Cir. 1997) (citing *Harris*, 510 U.S. at 21–22). The Sixth Circuit has recognized that the question of whether harassment is objectively so severe or pervasive as to constitute a hostile work environment is "quintessentially a question of fact." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 310 (6th Cir. 2016) (quoting *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006)).

In answering this question, the court must consider various factors, including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U .S. at 23. Although the work environment as a whole must be viewed by the court, including all alleged acts of harassment or abuse, if such acts are irregular and sporadic rather than continuous and frequent, it is much more difficult to prove a hostile work environment claim. *See id.* This is because "not all workplace conduct that may be

described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). For example, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted).

In her Complaint before the Tennessee Human Rights Commission and in her deposition, the plaintiff testified that, in February 2013, her coworker and subordinate, Marvin Wilson, made a gift of $500 to her after she complained to him and other colleagues about her financial problems. Shortly after making the $500 gift, Wilson approached her and asked her what she was doing for the weekend. When she responded that she was a homebody, he told her that "he could find something to do if he had someone to do it with." (Doc. No. 1, at 21.) The plaintiff responded that he had a wife. Wilson continued to make advances of this type "for several weeks," and the plaintiff always ignored them. (*Id.*)

Sometime thereafter, Wilson began making statements about the plaintiff's figure and how her jeans fit. The janitorial staff were permitted to wear jeans on Fridays. (*Id.* at 36, 99.) The plaintiff claims that his actions escalated from comments to his "walking behind [her] and making sexual grunting sounds." (*Id.*) When she confronted him about job duties, he would look at her breasts. "[A]s time progressed," Wilson began refusing to take work assignments and directives from her. (*Id.*) This conduct allegedly took place between 2013 and 2015. (*Id.*) In her deposition, she stated that Wilson engaged in this type of behavior more than ten times over the course of two years, and Ellison ignored him each time and walked away. (Doc. No. 57, Ellison Dep. 36.) She felt that, if she ignored him, "he would eventually stop." (*Id.*) She did not claim to

feel physically threatened or fearful. The behavior never involved touching, and Ellison never reported it to any other person until December 10, 2015. (Ellison Dep. 38.)

On that date, she was frustrated because Wilson would not comply with her directive that he assist her in putting trash into a dumpster, a duty she was not tall enough to do. She initially went to her supervisor, Jason Hodges, to report to him that Wilson at times refused to do his job duties. She continued: "And in explaining that, I broke down and I just explained everything, everything that I had been going through." (Ellison Dep. 40.) After this occurred, Hodges told her she needed to file a sexual harassment complaint against Wilson. She did not want to do so because she felt her job might be jeopardized, but Hodges explained to her that, if she did not, he would have to report it. He brought her the form to fill out. (Ellison Dep. 40.)

Even construed in the light most favorable to the plaintiff, there is little evidence on the basis of which a jury could reasonably conclude that the plaintiff subjectively found Wilson's conduct to be abusive to the point of altering the conditions of her employment. *Harris*, 510 U.S. at 21–22. The defendant, however, does not actually argue that the plaintiff did not subjectively find the behavior to be hostile and abusive, and the court finds, for purposes of summary judgment, that there is at least a material factual dispute on that question.

As for whether Wilson's behavior was objectively sufficiently severe or pervasive, the court finds, first, that it was not "severe": it did not involve any incidents of actual touching or threats of a physical or sexual nature. *See Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (recognizing that "harassment involving an element of physical invasion is more severe than harassing comments alone"[6]).

---

[6] The opinion makes clear that "physical invasion" generally means "touching and unwelcome physical contact." *Hawkins*, 517 F.3d at 334

The question of whether it was sufficiently "pervasive" presents a more difficult question. It does not appear to have taken place on a daily or even weekly basis and largely amounted to inappropriate looks and comments by one co-worker. While the plaintiff also alleges that Wilson started refusing work-related directives, she does not indicate the frequency with which that behavior took place, and she elsewhere admitted that Wilson was a hard worker who did his job well. (Ellison Dep. 61.) Other than the incident that took place on December 10, 2015, the plaintiff does not provide any actual examples of instances when Wilson refused to perform his job duties under her direction.

The court nonetheless finds that the plaintiff has created a material factual dispute as to whether the conduct was sufficiently pervasive to create a hostile work environment. The comments and conduct did not consist simply of three or four isolated incidents, and they amounted to more than "simple teasing" and "offhand comments." If a jury believes the plaintiff's version of events, it could find that Wilson's conduct constituted a pattern of behavior stretching over the course of two years that was calculated to humiliate or belittle his female supervisor on the basis of her gender. Insofar as it escalated to refusing direct instructions from her, it had the effect of interfering with the plaintiff's own job performance by calling her authority into question. The alleged conduct was clearly inappropriate and, if substantiated, would have violated CMCSS's sexual harassment policy. Viewing the totality of the work environment as a whole, including all alleged acts of harassment or abuse, a reasonable jury could find that Wilson's behavior created a hostile work environment.

### (b)      *The Employer's Liability*

The plaintiff alleges that sexual harassment by a co-worker created a hostile work environment. The Sixth Circuit makes a clear distinction between employer liability for a supervisor's sexual harassment and for a co-worker's sexual harassment. In the latter context,

according to the Supreme Court, "an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013) (internal citation omitted); *see also Equal Employment Opportunity Comm'n v. AutoZone, Inc.*, 692 F. App'x 280, 282–83 (6th Cir. 2017) ("Under Title VII, '[i]f the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions'—that is, if the employer knew or should have known of the harassment yet failed to take prompt and appropriate corrective action." (quoting *Vance*, 570 U.S. at 424).

The Sixth Circuit has held that application of this standard requires the plaintiff to "show that the employer's response to the plaintiff's complaints manifest[ed] indifference or unreasonableness in light of the facts the employer knew or should have known." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (internal quotation marks and citations omitted). Generally,

> a response is adequate if it is reasonably calculated to end the harassment. Steps that would establish a base level of reasonably appropriate corrective action may include promptly initiating an investigation to determine the factual basis for the complaint, speaking with the specific individuals identified by the complainant, [and] following up with the complainant.

*Id.* (internal quotation marks and citations omitted). Similarly, in the context of supervisor harassment,[7] courts have recognized that "[d]etermining if harassment occurred constitutes a threshold step in correcting harassment, and that undertaking requires an investigation deemed

---

[7] In *Faragher v. Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), the Supreme Court held that, where the harassing employee is the plaintiff's "supervisor," the employer may be vicariously liable for its employees' creation of a hostile work environment. The so-called *Faragher–Ellerth* defense provides that, where there is no tangible adverse-employment action alleged, the employer may nonetheless avoid liability for a hostile work environment created by that supervisor if it is able to show that it (1) "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765. This is an affirmative defense that the defendant must prove by a preponderance of the evidence. *Faragher*, 524 U.S. at 807.

reasonable when considering the individual circumstances." *Williams v. United Launch All., LLC*, 286 F. Supp. 3d 1293, 1308 (N.D. Ala. 2018). The Eleventh Circuit has elaborated upon the requirement of a reasonable investigation:

> The requirement of a reasonable investigation does not include a requirement that the employer credit uncorroborated statements the complainant makes if they are disputed by the alleged harasser. Nothing in the *Faragher–Ellerth* defense puts a thumb on either side of the scale in a he-said, she-said situation. The employer is not required to credit the statements on the she-said side absent circumstances indicating that it would be unreasonable not to do so.

*Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1303–04 (11th Cir. 2007); *see Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749 (6th Cir. 2008) (finding that the employer's response to the employee's complaints of sexual harassment by a co-worker did not constitute "indifference or unreasonableness" where the employer, when advised of the alleged harassment, launched a two-week investigation, interviewed the parties involved, and instructed co-worker not to bother employee and to avoid her work area when it was not necessary for him to be there); *Ross v. City of Dublin, Ohio*, No. 2:14-CV-02724, 2016 WL 7117389, at *18 (S.D. Ohio Dec. 7, 2016) (finding material factual dispute as to whether the defendant employer's response to the plaintiff's allegations of coworker harassment "manifests indifference or unreasonableness," where the defendant did not interview the plaintiff in its investigation of a racist comment directed at him and in light of the defendant's "failure, in 26 years, to investigate *any* complaints under its own discrimination policy," and distinguishing the case on its facts from *Mullins*, "where the employer conducted a lengthy investigation that included interviewing the victim").

In this case, the plaintiff alleges, first, that CMCSS knew or should have known about Wilson's inappropriate conduct prior to her December 10, 2015 report. This assertion is based on the fact that Wilson's personnel file reveals three prior complaints of sexual harassment or inappropriate

conduct. More specifically, documents attached to the plaintiff's original Complaint from Marvin Wilson's personnel file include a Letter of Reprimand issued to Wilson dated January 29, 2008, arising from a sexual harassment report submitted by two employees on January 18, 2008, based on his having made inappropriate comments to one of the employees around that date. The allegations, which are not detailed in the Letter of Reprimand, were deemed substantiated. Wilson was reprimanded, and he received a copy of the school's administrative policy regarding sexual harassment. (See Doc. No. 1, at 35.) The plaintiff also submitted a Letter of Concern issued to Wilson dated April 11, 2008, relating to a March 31, 2008 co-worker sexual harassment report of another incident in which Wilson had allegedly made inappropriate statements. The Letter of Concern notes that an investigation was conducted, but the allegations of sexual harassment were deemed not to be substantiated by a preponderance of evidence. Due to the previous reprimand, the Letter of Concern was nonetheless placed in his file, and Wilson again was counseled and provided a copy of the school's administrative policy regarding sexual harassment. (Doc. No. 1, at 36.) Another employee reported inappropriate comments by Wilson in September 2013. CMCSS conducted an investigation which did not substantiate actual harassment. The investigative report noted that Wilson "did not have a negative intentions [sic] and was not malicious. Very apologetic and understood how compliments could have been misunderstood." (Doc. No. 1, at 38.)

In other words, Wilson was found on one prior occasion, in 2008, to have engaged in affirmatively inappropriate conduct in violation of the school's sexual harassment policy. All of these incidents, substantiated or not, involved isolated instances of inappropriate comments rather than a pattern of hostile or abusive behavior or unwelcome physical contact. In other words, the conduct reflected in his personnel file "was not so habitual or severe that it was

imprudent for the [defendant] to retain him and to take corrective action in the form of discipline and counseling." *Patsalides v. City of Fort Pierce*, No. 15-14431-CIV-GRAHAM, 2016 WL 7971186, at *8–9, *aff'd*, 724 F. App'x 749 (11th Cir. 2018); *see id.* at *8 (reaching that finding, despite the fact that the alleged harasser had been the subject of at least nine complaints involving inappropriate sexual remarks and unwelcome sexual advances with non-co-workers over the course of fifteen years, five of which were sustained).

The Supreme Court has recognized that a plaintiff may show that an employer is negligent in controlling working conditions by, for example, failing to "monitor the workplace[,] respond to complaints [or] provide a system for registering complaints [or by] effectively discourag[ing] complaints from being filed." *Vance v. Ball State Univ.*, 570 U.S. at 449. The plaintiff here does not allege that CMCSS's response to any of the prior complaints was inappropriate or manifested indifference or neglect on the part of CMCSS, or that CMCSS had a history or practice of ignoring sexual harassment complaints. She has not shown that CMCSS had any reason to monitor Wilson closely or to believe that he would continue to engage in inappropriate behavior going forward. The court finds that the existence of the three prior complaints—only one of which was deemed substantiated—did not provide actual or constructive notice to CMCSS that Wilson would harass the plaintiff. Further, Ellison admits that she never told anyone about Wilson's inappropriate conduct toward her until December 10, 2015. She does not allege that CMCSS failed to have in place an appropriate sexual harassment policy or that she was in any way discouraged from taking advantage of that policy. The court finds that there is no material factual dispute as to whether CMCSS knew or should have known about Wilson's alleged sexual harassment up until the plaintiff reported it to Jason Hodges on December 10, 2015.

The question, then, is whether CMCSS's response to the plaintiff's complaint was sufficient. The plaintiff claims that the magistrate judge erred in finding that CMCSS responded

appropriately to her report of sexual harassment. Specifically, she protests that the investigation did not begin promptly and that she and Wilson were not separated. She reiterates her argument that CMCSS left her and her "aggressor together, without any supervisory or managerial staff being present for a total of thirty-three (33) days during the Christmas holidays." (Doc. No. 71, at 16–17.)

Courts have recognized that the reasonableness of any particular length of time between a report of sexual harassment and the institution of remedial measures, such as beginning an investigation, depends on the totality of circumstances. *See, e.g.*, *Guadalajara v. Honeywell Int'l, Inc.*, 224 F. Supp. 3d 488, 504 (W.D. Tex. 2016) (finding that a reasonable jury could conclude that the defendant's decision to allow the plaintiff and the alleged harasser to work together for nearly a week after the "Incident" was not reasonable). And this court certainly does not endorse CMCSS's response in this case. In particular, in light of the prior complaints in Wilson's personnel file, it was arguably unreasonable to wait nearly a month after the plaintiff's initial complaint before beginning an investigation or taking any action. Although the school was closed for approximately two weeks of that month, Ellison and Wilson were required to continue working together for at least two of those weeks, and Ellison claims she did not know whether Wilson had been told about her complaints.[8] However, in her deposition and her THRC Complaint, Ellison expressly denied that Wilson engaged in any sexually harassing or overtly hostile conduct after December 10, 2015,

---

[8] The defendant appears to argue that the plaintiff initially reported only that Wilson had engaged in behavior that she characterized as sexual harassment for a few months in 2013 but did not report it until 2015. In other words, the defendant suggests that the fact that the plaintiff waited two years to report sexually harassing behavior obviated any need to respond promptly to the allegations. The plaintiff disputes that characterization of her complaint, however, and her THRC complaint clearly alleges harassing conduct that began in 2013 and continued through 2015. Ellison's original Sexual Harassment Report Form submitted on December 10, 2015 is in the record as an exhibit to the Affidavit of Jeanine Johnson (Doc. No. 56-1, at 25–28), but the copy is so poor that it is completely illegible, as counsel for CMCSS acknowledged during Ellison's deposition. (See Ellison Dep. 41–42.) Because the Sexual Harassment Report Form is indecipherable, CMCSS's assertion that the plaintiff originally complained of incidents that took place in 2013, and only later expanded her allegations to claim that the harassment continued through 2015, cannot be verified at this juncture.

when she reported the alleged harassment to Jason Hodges. (Ellison Dep. 76–77.)[9] That is, it is undisputed that Wilson did not engage in any further harassing behavior after the plaintiff submitted her complaint.[10]

In *Tatum v. Arkansas Department of Health*, 411 F.3d 955 (8th Cir. 2005), the plaintiff complained that the defendant did not take her complaint of sexual harassment seriously, because it did not begin an investigation into her allegations until two weeks after her complaint and took eight weeks to complete it. During the investigation, the plaintiff was required to continue working in the same office as her alleged harasser. The Eighth Circuit noted that the defendant's remedial action was "perhaps not model" and that it "did not fully endorse" the defendant's handling of the plaintiff's complaint. *Id.* at 959. However, the plaintiff admitted that no harassment occurred after her initial complaint to the defendant. During the investigation, two supervisors interviewed approximately nineteen people. When they were interviewed, the plaintiff reiterated her complaints and the alleged perpetrator denied that the incidents had occurred. The investigators eventually concluded that, without corroborating evidence or witnesses, they "neither believed nor disbelieved" the plaintiff's account. *Id.* The court affirmed summary judgment in favor of the defendant, finding that the investigation did not fall below the

---

[9] In the Affidavit submitted in support of her Response to the defendant's Motion for Summary Judgment, the plaintiff claimed that Wilson's harassing behavior continued "up until February 18, 2016." (Doc. No. 64-1 ¶ 6.) However, a party cannot create a factual issue by filing an affidavit, after a motion for summary judgment has been made, that contradicts her earlier deposition testimony. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006) (citations omitted).

[10] The plaintiff testified that Wilson "acted differently" after he found out about the investigation in that he would "taunt" her by saying, "Good morning, Ms. Linda." (Ellison Dep. 76.) She also claimed she could tell by the expression on his face that he was angry and that "she just knew he had an attitude toward [her]." (*Id.* at 77.) She did not report any inappropriate behavior to Carol Joiner, and she admits that Joiner told her that Wilson should not take any retaliatory action and to let her and Principal Staggs know if he bothered her or did anything inappropriate. (*Id.*)

required standard of care:

> Two qualified professionals did a thorough job of investigating Tatum's complaint and issuing a finding. There was no further harassment during the investigation period. We believe Tatum failed to show that the Arkansas Department of Health failed to complete a prompt and effective investigation. Without this showing, Tatum's hostile work environment claim fails.

*Id.* at 959–60.

Other courts, including the Sixth Circuit, appear to agree that, where no harassment occurs after a report is made, the employer-defendant's response to the harassment allegations cannot be found to have fallen below the negligence standard. *See, e.g.*, *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 51 (6th Cir. 1996) (holding that, where the harassment stopped after an employer took its remedial action, the employer responded adequately); *see also Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 637 (7th Cir. 2009) ("In assessing the corrective action, our focus is not whether the perpetrators were punished by the employer, but whether the employer took reasonable steps to prevent future harm. . . . *There is no question that a stoppage of harassment shows effectiveness. . . .*" (internal quotation marks omitted; emphasis added)); *Arango v. Telemundo El Paso*, 20 F. Supp. 3d 559, 566 (W.D. Tex. 2013) (granting summary judgment for the defendant where the plaintiff "admitted . . . that the sexual harassment . . . stopped after Plaintiff's complaint"); *Bumbarger v. New Enter. Stone & Lime Co.*, 170 F. Supp. 3d 801, 838 (W.D. Pa. 2016) ("When the employer's response stops the harassment, there can be no employer liability under Title VII as a matter of law."); *Ortiz v. Ga. Pac.*, 973 F. Supp. 2d 1162, 1181 (E.D. Cal. 2013) ("One week of inaction of this type, absent evidence of further harassment, does not demonstrate a failure to complete a prompt and effective investigation."); *Turner v. Atl. Se. Airlines, Inc.*, No. 1:07-CV-0039-RLV-CCH, 2008 WL 11319910, at *7 (N.D. Ga. Aug. 7, 2008) ("As Mr. Cumbie did not harass Plaintiff after that, ASA's remedial action

was prompt and adequate."), *report and recommendation adopted*, No. 1:07-CV-0039-RLV, 2008 WL 11319982 (N.D. Ga. Nov. 20, 2008), *aff'd*, 352 F. App'x 416 (11th Cir. 2009).

Besides the undisputed fact that Wilson did not engage in any harassing conduct after the plaintiff submitted her sexual harassment complaint, it is also clear that CMCSS conducted a thorough investigation, interviewing the plaintiff, Wilson, the two purported witnesses identified by the plaintiff, the plaintiff's supervisor, and the school principal. The plaintiff does not suggest that there were other individuals who were not, but should have been, interviewed. The authorities conducting the investigation instructed the plaintiff to let them know if Wilson took any inappropriate action while the investigation was pending. The plaintiff complains that the employer's response was insufficient because she and Wilson were not separated during the investigation, but an employer has no duty to ensure that the accuser and accused are "separated at all times." *Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 372 (6th Cir. 2014); *see also Richert v. Glob. Pers. Sols., Inc.*, No. 1:17-CV-3, 2018 WL 1975680, at *6 (E.D. Tenn. Apr. 26, 2018) ("Unless there is evidence of continued harassment, the employer need not physically separate the perpetrator from the victim." (citing *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749 (6th Cir. 2008) (refusing to impose Title VII liability for failing to keep two employees separated)).

Based on all of these facts, but with particular emphasis on the absence of any additional harassing behavior after the plaintiff made her initial sexual harassment complaint, the court finds as a matter of law that the plaintiff cannot establish that CMCSS was negligent or failed to take prompt remedial action in response to Ellison's complaint.

The plaintiff also appears to take issue with CMCSS's finding that her complaint was not substantiated. The court rejects that contention as well. The question is not whether CMCSS's conclusion was correct but whether it acted in good faith. Indeed, "[d]espite the actual existence of

sexual harassment, an investigation may shield an employer from Title VII liability even where investigation turned up no evidence of harassment if made in good faith." *Goff v. Soundolier Div. of Am. Trading & Prod. Corp.*, No. Civ.A.3:98-CV-2254-P, 2000 WL 707810, at *4 n.2 (N.D. Tex. May 30, 2000) (citing *Harris v. L & L Wings, Inc.*, 132 F.3d 978 (4th Cir. 1997)). Ellison has not shown that the defendant did not have an honest belief in the conclusions reached by the investigators. *Accord Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) ("Michael's disagreement with the facts uncovered in Caterpillar's investigation does not create a genuine issue of material fact that would defeat summary judgment 'as long as an employer has an honest belief in its proffered nondiscriminatory reason'" (citation omitted)).

The prior complaints against Wilson alone are not sufficient to tip the scales in the plaintiff's favor, where there was no other corroborating evidence and Wilson denied the allegations. The plaintiff appears to claim that CMCSS disregarded the statements by teachers Sherry Bagwell and Debbie Schaffer, whom the plaintiff identified as witnesses. But those statements did not remotely corroborate the plaintiff's allegations. Bagwell stated only that Wilson had, a few years previously, given her "funny vibes" and seemed "creepy," once said to her, "Good morning Miss America," and was occasionally a little "flirty," but "nothing over the line." (Doc. No. 71, at 16; *see also* Doc. No. 63, at 62.) That conduct does not qualify as sexual harassment, and Bagwell denied witnessing any inappropriate conduct by Wilson. For her part, Schaffer commented that she had once noticed that Wilson took a "seemingly long time to clean another teacher's classroom" (Doc. No. 71, at 16), which does not constitute sexual harassment, and she also denied witnessing inappropriate conduct by Wilson or telling the plaintiff that she had. (Doc. No. 63, at 65.) The plaintiff has not pointed to any evidence in the record suggesting that the employer's investigation was deficient or conducted in bad faith.

Finally, while Ellison claims that she was subject to "numerous" adverse employment actions, the only concrete action she points to is her transfer to a different school. As discussed

above, the plaintiff initially requested the transfer. Although she apparently later regretted making that request, the reassignment was not adverse in any sense of the word, and the plaintiff does not allege that it imposed any hardship on her. She admitted in her deposition that she communicated to "some people" that she was "happy at Minglewood and thankful for that job." (Johnson Aff. ¶ 34; Ellison Dep. 86.) Consequently, Ellison also cannot establish that her transfer to Minglewood, as a remedial measure, was inappropriate. Under the circumstances, in light of CMCSS's inability to substantiate the plaintiff's allegations of inappropriate conduct, the transfer was not an unreasonable response on the part CMCSS to the plaintiff's harassment allegations and her expressed desire not to continue working with Wilson. *See Baldwin*, 480 F.3d at 1305 (suggesting that the defendant's offer to transfer the plaintiff could be not be deemed a "proper remedial measure" only "because of the hardship it would have imposed on her"); *Richert*, 2018 WL 1975680, at *6 ("The fact that [the plaintiff] quickly regretted this decision [to accept transfer] does not render GPS's response to her complaint—or the remedial options offered—inadequate or inappropriate.").

In sum, the court finds that the magistrate judge did not err in concluding that the plaintiff failed to establish that her employer responded inappropriately to her complaint of sexual harassment. CMCSS is entitled to summary judgment on this claim.

**(6)     Work Place Harassment**

Finally, Ellison argues that the defendant has offered no argument to counter her claim of "work place harassment." (Doc. No. 71, at 18.) The plaintiff fails to understand that her sexual harassment claim and hostile work environment claim are one and the same. She attempts to assert a separate claim of workplace harassment based on the actions of Principal Yvonne Hackney, who retired in June 2014. The plaintiff did not file her charge of discrimination with the Tennessee Human Rights Commission until February 17, 2016. Any claims arising from actions taken by Yvonne Hackney are clearly barred by the statute of limitations, 42 U.S.C. § 2000e-(5)(e), which provides that a charge of employment discrimination shall be filed with the EEOC within 180 days

after the alleged unlawful employment practice occurred, or within 300 days if the aggrieved person has initially instituted proceedings with an authorized state agency. The plaintiff's vague claims of workplace harassment based on the conduct of Hackney (and Joiner and Johnson) are completely without merit.

## V.      Conclusion

For the reasons set forth herein, the court will overrule the plaintiff's objections and accept the magistrate judge's R&R in its entirety. The defendants' Motion for Summary Judgment will be granted, and this case will be dismissed.

An appropriate order is filed herewith.

ENTER this 22nd day of January 2019.

ALETA A. TRAUGER
United States District Judge